IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

**In re**  Chapter 13
**LILLIAN M. HASKINS,**  Case No. 15-60644
    **Debtor.**

**MEMORANDUM DECISION**

Lillian M. Haskins is a debtor in this Court. Ms. Haskins filed an objection to LVNV Funding, LLC ("LVNV")'s unsecured proof of claim. Both Ms. Haskins and LVNV agree that the claim is barred by the statute of limitations. The only reason LVNV contests Ms. Haskins's objection is because she filed her objection to claim after this Court entered an order confirming her chapter 13 plan. According to LVNV, the objection is barred by res judicata. The debtor disagrees. So, the question is whether the debtor's objection to LVNV's unsecured claim is barred by res judicata when she filed the objection after confirmation of her chapter 13 plan yet LVNV filed its unsecured proof of claim before plan confirmation.

**FINDINGS OF FACT**

The facts are not in dispute. Tr. 23:5–14.

On April 9, 2015, the debtor filed a voluntary chapter 13 petition in this Court. ECF Doc. No. 1. On April 20, 2015, the debtor filed her chapter 13 plan. ECF Doc. No. 11. The plan disclosed that estimated non-priority unsecured debt amounted to $21,253.87. The plan provided for payments to the chapter 13 trustee for a period of 36 months. It further provided that out of the payments to the chapter 13 trustee, all allowed priority claims would be paid in full, and secured claims would be paid the full value of the allowed amount of such claims. *See* 11 U.S.C. § 1322(a)(2) (requiring full payment of priority claims); *id.* § 1325(a)(5) (describing possible treatment of secured claims). The plan, therefore, estimated the amounts of the priority and

secured claims and specified payment terms for each of these claims. By contrast, as to general unsecured claims, the plan provided that unsecured claims would be paid collectively.[1] The plan proposed to treat unsecured creditors as a class and did not provide estimates of the amounts of specific individual unsecured claims. *See* ECF Doc. No. 11 at 3 ("Allowed non-priority unsecured claims shall be paid pro rata from any distribution remaining after disbursement to allowed secured and priority claims. Estimated distribution is approximately 33%.").

The deadline to object to confirmation of the plan was June 18, 2015, seven days prior to the scheduled confirmation hearing. *See* Fed. R. Bankr. P. 2002(b); ECF Doc. Nos. 5, 11. The deadline to file a proof of claim, however, did not pass for another two months. *See* ECF Doc. Nos. 5, 8; *see also* Fed. R. Bankr. P. 3002(c).[2]

No creditors objected to confirmation of the plan.

On June 10, 2015, before the bar date and prior to confirmation, LVNV, through Resurgent Capital Services, filed an unsecured, non-priority proof of claim for $2,111.76. Claim 10-1. The proof of claim states that LVNV purchased the debt from FNBM, LLC. The proof of claim also provides that the last payment date and the last transaction date on the underlying debt was June 4, 2009, approximately six years prior to the filing of this bankruptcy case. Two weeks later, on June 24, 2015, the Court confirmed the debtor's plan upon the chapter 13 trustee's recommendation. ECF Doc. No. 17. The confirmation order recited that the plan meets the requirements of section 1325 of the Bankruptcy Code.

---

[1] Ms. Haskins did not separately classify any unsecured claims.

[2] Federal Rule of Bankruptcy Procedure 3002(c), as of the date of this decision, establishes the deadline to file a proof of claim, except for governmental units, in chapter 13 cases as 90 days after the first date set for the meeting of creditors. Under the current Rules, the deadline to file a claim is always after the deadline to object to confirmation of an initial chapter 13 plan because of the accelerated time periods for chapter 13 plan confirmation. *See infra* notes 8, 10.

Thirteen months later, the debtor objected to LVNV's proof of claim, asserting that the claim was, among other bases, barred by the statute of limitations and should be disallowed. ECF Doc. No. 19. LVNV filed a response to the debtor's objection requesting that the objection be overruled because the objection was barred by res judicata. ECF Doc. No. 21.

The Court held a hearing on the objection and response on September 29, 2016. Counsel for the debtor, counsel for LVNV, and the chapter 13 trustee appeared and presented argument. Counsel for the debtor insisted that the debtor had met the burden on her objection and that the unsecured claim was barred by the three-year statute of limitations. Tr. at 3:22–5:12; 18:23–19:4. He urged the Court to sustain the objection. *Id.* at 5:12–13. The chapter 13 trustee agreed with the debtor. The chapter 13 trustee stressed the importance of the statutory claims allowance process and asked the Court to find res judicata did not bar the debtor's objection in this case. *Id.* at 20:14–21:9.

Counsel for LVNV agreed the underlying debt would be barred by the statute of limitations. *Id.* at 6:10–18.[3] All the same, LVNV's "argument is simple, that a claim filed before confirmation, as this claim was, that was not addressed in any material way, the confirmation order has res judicata effect on the disposition of that claim." *Id.* at 5:16–21.

Following argument, the Court took the matter under advisement and requested the parties to file briefs in support of their respective positions, with an opportunity to reply to the initial briefs if desired. Both the debtor and LVNV filed briefs. ECF Doc. Nos. 28, 29. LVNV filed a reply brief. ECF Doc. No. 30.

---

[3]

> THE COURT: Is there any dispute as to the defense the Debtor is raising that the claim is barred by the statute of limitations?
> MR. BUXBAUM [for LVNV]: No. The argument is based solely on time of the objection.
> THE COURT: Okay. But as to the underlying allegation that it is undisputed, that this is a time-barred debt.
> MR. BUXBAUM: That is undisputed.

Tr. at 6:10–18.

3

**JURISDICTION**

The Court has jurisdiction over this bankruptcy case by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a), the delegation made to this Court by Order of Reference from the District Court entered on December 6, 1994, and Rule 3 of the Local Rules of the United States District Court for the Western District of Virginia. The allowance or disallowance of claims against the estate is a "core" proceeding within the meaning of 28 U.S.C. § 157(b)(2)(B).

**ANALYSIS**

I. *Res Judicata*

*A Prior Judgment May Preclude Subsequent Litigation*

"Under *res judicata* principles, a prior judgment between the same parties can preclude subsequent litigation on those matters actually and necessarily resolved in the first adjudication." *First Union Commercial Corp. v. Nelson, Mullins, Riley & Scarborough (In re Varat Enters., Inc.)*, 81 F.3d 1310, 1314–15 (4th Cir. 1996). "The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). The Supreme Court explained the purpose of these doctrines: "[b]y 'preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate,' these two doctrines protect against 'the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions.'" *Id.* (quoting *Montana v. United States*, 440 U.S. 147, 153–54 (1979)); *see also Keith v. Aldridge*, 900 F.2d 736, 740 (4th Cir. 1990) ("[A] principal purpose of the general rule of res judicata is to protect the defendant from the burden of relitigating the same claim in different suits . . . .").

When res judicata applies, a prior judgment will preclude subsequent litigation. LVNV contends res judicata applies to bar Ms. Haskins's objection to its proof of claim. Consequently, LVNV insists this Court must preclude Ms. Haskins from objecting to LVNV's general unsecured claim (the "subsequent litigation") because the Court has confirmed her chapter 13 plan (the "prior judgment").

### *The "Prior Judgment": the Confirmation Order*

#### *a. Plan confirmation dictated by statute: 11 U.S.C. § 1325*

Bankruptcy Code section 1325 lays out the requirements of confirmation. "[T]he court *shall* confirm a plan if" the requirements of section 1325 of the Bankruptcy Code are satisfied. 11 U.S.C. § 1325(a) (emphasis added). If the plan is drafted consistent with section 1322, and meets the requirements of section 1325, a bankruptcy court must confirm the plan.[4] The Bankruptcy Code does not permit a court to impose additional requirements of confirmation not present within the statute. *See, e.g.*, *Petro v. Mishler*, 276 F.3d 375, 378 (7th Cir. 2002) ("[B]y creating a finite list of . . . affirmative requirements necessary for a plan's confirmation, we assume that Congress intended to exclude other requisites from being grafted onto section 1325(a).").

Generally, the chapter 13 Bankruptcy Code provisions treat general unsecured claims as a class. With respect to unsecured claims, section 1325 instructs that the court shall confirm the plan if: 1) the plan, as well as the petition, has been proposed in good faith and is feasible; 2) when the plan separately classifies unsecured claims, it does not unfairly discriminate; 3) the

---

[4] If the plan is drafted consistent with Bankruptcy Code sections 1322 and 1325, it should not contain "illegal provisions"; if however the debtor inserts an impermissible or illegal provision, not found in chapter 13, the Court is not obliged to confirm that plan. *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 277 n.14 (2010) ("Section 1325(a) does more than codify this principle; it *requires* bankruptcy courts to address and correct a defect in a debtor's proposed plan even if no creditor raises the issue." (emphasis in original)); *see also* 11 U.S.C. § 1325(a)(3) (plan must be proposed in good faith).

5

value of property to be distributed on account of the unsecured claims is not less than the claim holders would receive in a chapter 7 liquidation; and 4) if an unsecured creditor or the chapter 13 trustee objects, either the value to be paid on account of such unsecured claim is not less than the amount of the claim or all of the debtor's projected disposable income to be received in the commitment period is applied to make payments to unsecured creditors under the plan. 11 U.S.C. §§ 1322(b)(1), 1325(a)(1), (3), (4), (6); *see also id.* § 1325(b)(1)(B). As these sections show, the plan must provide a "pool" of funds earmarked to be disbursed to general unsecured creditors and hence provides for the unsecured claims collectively not individually. Ms. Haskins's plan, like that of most debtors and consistent with these sections, does not establish the value of each allowed unsecured claim, but rather the value of the "pool" of funds earmarked to be disbursed to holders of allowed unsecured claims.[5] In this way, Ms. Haskins's plan provides for her unsecured creditors collectively, not individually. *See Dubois v. Atlas Acquisitions LLC (In re Dubois)*, 834 F.3d 522, 531–33 (4th Cir. 2016) (discussing how the amount most chapter 13 debtors "pay into their bankruptcy plans is unaffected by the number of unsecured claims that are filed").

As explained above, the Code requires the plan to address the collective amounts to be distributed to unsecured claims. Yet the Code does not require the plan to establish the allowed amount of each general unsecured claim. Instead, the Code specifies that the filing of a proof of claim will establish the allowed amount of a general unsecured claim, which amount remains allowed unless a party in interest objects. 11 U.S.C. §§ 501, 502. Once these claims have been

---

[5] Occasionally debtors separately classify and expressly provide for specific unsecured claims in their plans. *See* 11 U.S.C. § 1322(b)(1) (authorizing disparate treatment of unsecured claims, as long as the debtor does not "discriminate unfairly"). This has no bearing on this decision, as Ms. Haskins did not classify unsecured claims in her confirmed plan.

6

filed, the debtor or trustee is then able to calculate the pro rata yield to these claimants out of the "pool" of funds earmarked for this class.

The amounts to be disbursed under the plan often do not pay the allowed unsecured claim in full, and in this way may modify the unsecured creditor's rights. All the same, merely because the amounts to be disbursed to unsecured creditors as a class affect the unsecured creditor's rights does not mean that the plan has determined the allowed amount of each general unsecured claim within the class. It does not need to; the Code provides a specific procedure for determining an allowed unsecured claim. *See* 11 U.S.C. §§ 501, 502.

By contrast, secured claims in chapter 13 are regulated individually. *See* 11 U.S.C. § 1325(a)(5) (requiring treatment in the chapter 13 plan of "each allowed secured claim"). The chapter 13 plan must expressly provide for each secured claim, although the debtor may challenge the value of a secured claim and then provide for it in the allowed amount. *Id.*; 11 U.S.C. § 506 (providing procedures to determine an allowed secured claim).[6] The Code does not have a similar procedure for establishing or determining the allowance of general unsecured claims prior to the filing of a proof of claim, with the limited exceptions contained in section 502(c).[7] The claims allowance process of section 502, including the 502(c) claim estimation

---

[6] More to the point, the debtor may, pursuant to section 506, determine the value of an allowed secured claim, and in the process bifurcate a claim into secured and unsecured portions. The debtor may then under chapter 13 provide for the value of the allowed secured claim (as bifurcated) in his chapter 13 plan. *Id.* § 1325(a)(5). Upon confirmation, that value would be binding on all parties. It is for this reason that many courts have applied the binding effect of a confirmation order to preclude litigation regarding the allowed amount of such secured claim post-confirmation. *See, e.g.*, *First Union Commercial Corp. v. Nelson, Mullins, Riley & Scarborough (In re Varat Enters., Inc.)*, 81 F.3d 1310, 1316–17 (4th Cir. 1996) (finding res judicata applied to bar post-confirmation objection to claim treated as secured in chapter 11 plan based on corollary provisions of chapter 11); *see also Hope v. Acorn Fin., Inc.*, 731 F.3d 1189 (11th Cir. 2013) (finding that confirmation of a chapter 13 plan which determined the secured status of creditor prevented trustee from avoiding as a preferential transfer the perfection of the creditor's security interest).

[7] Two limited exceptions are found in section 502(c). Specifically, an unsecured claim may be estimated, when no proof of claim is filed, if (1) the claim is contingent or unliquidated, "the fixing or liquidation of which . . . would unduly delay the administration of the case," or (2) the claim "aris[es] from a right to an equitable remedy for

7

process, is independent from the plan confirmation process.[8] The debtor simply does not have a statutory method to initiate a proceeding to determine the allowed amount or validity of a general unsecured claim until the proof of claim has been filed.

So, in this case, the confirmation order approved plan confirmation, as directed by section 1325. The prior judgment, as the confirmation order, established that the plan meets the statutory requirements of confirmation, which in this case did not establish the amount or validity of particular general unsecured claims.

### b.  *The Confirmation Order and the Effect of 11 U.S.C. § 1327*

The Supreme Court has noted, in the context of evaluating whether an appeal was from a final order, "[a] bankruptcy case involves 'an aggregation of individual controversies,' many of which would exist as stand-alone lawsuits but for the bankrupt status of the debtor." *Bullard v. Blue Hills Bank*, 135 S. Ct. 1686, 1692 (2015) (citing 1 Collier on Bankruptcy ¶ 5.08[1][b], p. 5–42 (16th ed. 2014)). Throughout the life of a bankruptcy case, a bankruptcy court makes many final determinations. Because of this "aggregation of individual controversies" in bankruptcy cases, bankruptcy court judgments may not always fit neatly into the res judicata paradigm which stems from "ordinary civil litigation," in which "a case in federal district court culminates in a 'final decisio[n].'" *See id*. at 1691 (citing 28 U.S.C. § 1291).

---

breach of performance." 11 U.S.C. § 502(c). Section 502(c) is designed to facilitate the efficient administration of the bankruptcy estate and only is invoked in those two explicit situations.

[8]  Both processes track different timelines and employ separate procedures. While frequently interrelated, each operates independently in chapter 13 cases. Confirmation travels more expeditiously. Chapter 13 plans must be filed with the petition or at least within fourteen days of the filing of the petition, unless the bankruptcy court extends the time. Fed. R. Bankr. P. 3015(b). Twenty-eight-days notice must be given of the confirmation hearing. Fed. R. Bankr. P. 2002(b). Confirmation hearings must be held not earlier than twenty days nor later than forty-five days after the first meeting of creditors, which meeting is to be held within 20 to 50 days after the petition is filed. 11 U.S.C. §§ 341, 1324(b) (allowing for the shortening of the time period for confirmation hearings but not the lengthening); Fed. R. Bankr. P. 2003. By contrast, unsecured creditors have a longer period in which to file their proofs of claim, and thus confirmation often occurs before all claims, and objections thereto, are filed. Unsecured claims must be filed no later than 90 days following the first date set for the section 341 meeting of creditors. Fed. R. Bankr. P. 3002(c) (2016). Bankruptcy courts lack the discretion to shorten this time period, even for cause. Fed. R. Bankr. P. 9006(c)(2) (2016).

The confirmation order in this case is a final order. The appeal period long passed and no reconsideration or appeal occurred. Although a final order, it is not "a 'final decisio[n]' . . . a ruling 'by which a district court disassociates itself from a case.'" *See id*. Instead the order has preclusive effect on those issues that were litigated or determined at confirmation, even if the order cannot simply fit neatly into the res judicata test.[9]

Section 1327 of the Bankruptcy Code provides that "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327; *see also Bullard v. Blue Hills Bank*, 135 S. Ct. 1686, 1692 (2015) ("When the bankruptcy court confirms a plan, its terms become binding on debtor and creditor alike."). This effect binds parties to plan terms. Further, similar to the binding effect of res judicata, "[c]onfirmation has preclusive effect, foreclosing relitigation of 'any issue actually litigated by the parties and any issue necessarily determined by the confirmation order.'" *Bullard*, 135 S. Ct. at 1692 (quoting 8 *Collier on Bankruptcy* ¶ 1327.02[1][c], at 1327–26; *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 275 (2010)). The order confirming a plan precludes relitigation of confirmation objections raised or those that could have been raised prior to confirmation. Stated differently, although a final order, with preclusive effect, the confirmation order will only preclude an issue or matter that was either litigated or necessarily determined at confirmation.

---

[9] The Fourth Circuit has established three elements that must be met for res judicata to apply: "(1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits." *Pueschel v. United States*, 369 F.3d 345, 354–55 (4th Cir. 2004); *see also Varat Enters., Inc.*, 81 F.3d at 1315. This equitable doctrine should apply to preclude duplicate litigation between the same parties. On the other hand, this equitable doctrine should not apply here when it is not asserted to prevent duplicate litigation between the same litigants but instead to thwart a debtor's statutory rights. In the present case, LVNV asks this Court to rely on an order determining that statutory criteria for confirmation of a plan were satisfied to prevent a debtor from using the claims allowance process, a separate and unique statutory process.

9

### *The "Subsequent Litigation": Objection to Proof of Claim*

The action sought to be precluded by the confirmation order in this case is an objection to an unsecured claim. LVNV suggests that by confirming the plan, the Court determined the allowed amount of its general unsecured claim. This Court disagrees.

When this Court confirmed Ms. Haskins's chapter 13 plan, the Court approved the amounts to be disbursed to general unsecured claims as a class. This Court did not, at confirmation, determine the amount of each general unsecured claim. Indeed, general unsecured creditors should expect that the plan will treat unsecured creditors fairly but should not expect that the plan will establish the amount of their debt, or disallow their claim, especially when, as here, the deadline to object to plan confirmation passed long before the deadline to file a proof of claim.[10]

Bankruptcy Code section 502 establishes three methods through which a claim is allowed. First, "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). That is, once a proof of claim is filed, that claim is deemed allowed. Second, if a party in interest files an objection to the proof of claim, a bankruptcy court may determine that the claim is allowed. *See id.* § 502(b). Finally, a bankruptcy court may allow an estimate of a claim pursuant to section 502(c). *See id.* § 502(c). Likewise, a bankruptcy court may disallow a claim through an objection pursuant to section 502(b). *See id.* § 502(b).

Federal Rule of Bankruptcy Procedure 3007 addresses the process for such an objection to claim. The Rule provides: "[a]n objection to the allowance of a claim shall be in writing and

---

[10] Federal Rule of Bankruptcy Procedure 3002(c), as of the date of this decision, establishes the deadline to file a proof of claim, except for governmental units, in chapter 13 cases as 90 days after the first date set for the meeting of creditors. In this case, the deadline to object to confirmation was June 18, 2015. The deadline to file a proof of claim for general unsecured creditors passed almost two months later on August 13, 2015.

10

filed." Fed. R. Bankr. P. 3007(a). The filing of that objection initiates a contested matter. *See* Fed. R. Bankr. P. 9014; *see also In re Clark*, 551 B.R. 910, 913 (Bankr. N.D. Okla. 2016) ("The filing of an objection to claim creates a contested matter governed by Bankruptcy Rule 9014. It is a contested matter that exists independently of plan confirmation." (footnote omitted)). Neither section 502 of the Bankruptcy Code nor Federal Rule of Bankruptcy Procedure 3007 set any deadline for the filing of an objection to claim.

In this case, LVNV filed a proof of claim, and its general unsecured claim was deemed allowed unless objected to. The debtor filed an objection to LVNV's proof of claim, and in this way raised her affirmative defense of the statute of limitations, and asked the Court to disallow LVNV's claim pursuant to section 502(b). LVNV concedes its claim cannot withstand a statute of limitations challenge but asks the Court to overrule the objection anyway, simply because the general unsecured claim happened to be filed prior to entry of the order of confirmation.[11]

---

[11]    As noted above, the Supreme Court has described the purpose of the doctrine of res judicata as "to protect against 'the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (quoting *Montana v. United States*, 440 U.S. 147, 153–54 (1979)).

Ms. Haskins's objection to LVNV's unsecured proof of claim causes neither the vexation nor the expense of multiple lawsuits.

The filing of the objection to claim initiates a contested matter, and under the facts of this case, the objection would be the first contested matter regarding this unsecured claim. At oral argument, LVNV appeared to admit that had the confirmation occurred before the proof of claim was filed, the outcome would be different and the objection to claim would most likely be sustained. *See* Tr. 21:12–21. But for the res judicata argument, therefore, LVNV may not have filed a response to the objection to claim. The Court thus is unable to imagine how in this case, absent the argument based on res judicata, expense and vexation of multiple lawsuits would prove worrisome.

Barring the objection in this case will neither increase nor decrease the possibility of inconsistent decisions. A ruling on an objection to a claim filed pre-confirmation should present no more confusion than an order on the allowance or disallowance of a claim filed post-confirmation. That is because the allowance or disallowance of LVNV's unsecured claim will have no effect on the terms of this confirmed plan.

The purposes underlying the doctrine of res judicata simply do not fit this situation. LVNV argues that the objection to claim could have been brought earlier, that is, before the Court entered an order confirming Ms. Haskins's chapter 13 plan. LVNV is correct that an objection to claim may be brought any time after the claim is filed. What LVNV has not sufficiently convinced this Court is why the objection to a general unsecured claim must have been filed prior to confirmation, if at all. Stated differently, LVNV asks that this Court impose requirements not present in the Bankruptcy Code or Federal Rules. In effect, LVNV asks the Court to apply res judicata when the purposes of the doctrine will not be served, and when the effect is contrary to statutory authority.

11

The concept that a confirmation order serves as res judicata as to an objection to a general unsecured claim seems to conflate the confirmation process with the claims allowance process. *See Clark*, 551 B.R. at 913 (explaining that an objection to claim "is a contested matter that exists independently of plan confirmation"). Congress crafted two separate procedures relevant to this dispute, one for chapter 13 confirmation and another for claims allowance. While section 502 governs the claim allowance process, section 1325 governs the plan confirmation process, but "[t]here is nothing in § 1325 that says a plan may not be confirmed because issues relating to the allowance of unsecured claims remain unresolved." *Id.* Confirmation of the plan establishes the treatment and amounts to be disbursed to the class of unsecured creditors, but confirmation of the plan cannot establish the amount of each debt.[12] The claims allowance process, through the filing of a proof of claim or objection thereto, is the mechanism to determine the allowed amount of the liability.

No provision of the Bankruptcy Code renders the claims allowance process inapplicable to those unsecured proofs of claim that were filed prior to confirmation of a chapter 13 plan. What is more, the statutory chapter 13 plan confirmation process does not require the Court to determine which already-filed general non-priority unsecured claims should be allowed or disallowed.

In this case, this Court's order of confirmation was not intended to contravene the statutory framework for the claims allowance process. By operation of law, the filing of a proof claim triggers initial allowance of that claim. 11 U.S.C. § 502(a). The Court's confirmation order was not the mechanism that initially allowed LVNV's general unsecured claim. As soon as it was filed, LVNV's claim was allowed by operation of law; the Court did not need to make

---

[12] The debt is the "liability on a claim"; the claim is simply the "right to payment" based on that debt. 11 U.S.C. § 101(5)(A), (12).

such a determination as to the amount or validity of the claim because no objection to claim had yet been filed.[13]

If a party in interest objects, the court must then determine the amount and validity of the claim. *Id*. at § 502(b). "If objected to, the Code disallows claims based on time-barred debts." *Dubois v. Atlas Acquisitions LLC (In re Dubois)*, 834 F.3d 522, 529 (2016). After confirmation of her plan, Ms. Haskins filed such an objection to LVNV's proof of claim. The determination of the amount and validity of LVNV's general unsecured claim is now before the Court. Because the Court is considering the amount and validity of LVNV's claim for the first time, the Court is unable to conclude that its prior confirmation order determined the amount and validity of LVNV's claim. Ms. Haskins's objection to LVNV's general unsecured claim, although "subsequent litigation," is not precluded by the order confirming her chapter 13 plan.[14]

### *Covert v. LVNV Funding LLC*

In support of its argument for res judicata, LVNV relies upon language in the Fourth Circuit's decision, *Covert v. LVNV Funding, LLC*, 779 F.3d 242 (4th Cir. 2015). *Covert* is a decision addressing the plaintiffs' attempt to use the Fair Debt Collection Practices Act ("FDCPA") and other consumer protection statutes to obtain personal recovery from LVNV after

---

[13] In addition to the debtor, other unsecured creditors have standing to object to the proof of claim, and if a purpose would be served, the chapter 13 trustee. 11 U.S.C. §§ 1302(b)(1); 704(a)(5) ("The trustee shall . . .if a purpose would be served examine proofs of claims and object to the allowance of any claim that is improper . . . ."). Until claims bar dates have passed, debtors and trustees cannot determine the precise pro rata distribution derived from the pool. Until the priority claims have been satisfied, the trustee in this case could not undertake disbursements to the general unsecured class because under Ms. Haskins's plan, the allowed unsecured claims would be paid pro rata from any distribution remaining *after* disbursement to allowed secured and priority claims. *See* ECF Doc. No. 11 (plan provided for full satisfaction of priority claims prior to disbursement to unsecured claims, rather than concurrent disbursements among priority and non-priority).

[14] LVNV has not explained how an objection to its proof of claim if filed before confirmation would have made any difference to the Court's ruling on plan confirmation. The objection to the allowance of LVNV's general unsecured claim would have a bearing on the claim's allowance and thus the amount of the distribution to LVNV, but under the facts of this case the Court would have confirmed the plan because it met all the requirements of confirmation, whether or not LVNV's claim was allowed.

13

LVNV participated in their respective bankruptcy cases. *Covert* is not a decision addressing the claims allowance process in bankruptcy cases. *Covert* is thus inapplicable to the circumstances here.

In *Covert*, five plaintiffs filed a lawsuit in federal district court against LVNV alleging violations of the FDCPA and other state consumer protection statutes. *Id.* at 245. Each plaintiff was, at the time of the filing of the action, a chapter 13 debtor practically at the end of their respective plans and poised for a discharge. *Id.* LVNV had filed an unsecured proof of claim in each plaintiff's chapter 13 case. *Id.* at 244–45. By this point in the bankruptcy cases, the trustee had nearly completed the pro rata disbursements to all unsecured creditors, including LVNV.[15] The debtors in *Covert* never objected to LVNV's unsecured claims in their bankruptcy cases. Instead, the debtors allowed their chapter 13 plans to conclude, and obtained a discharge of their personal liability to LVNV, without ever raising any defense to the liability or to the proofs of claim.

In the district court action, the plaintiffs sought personal damages for alleged violations of the FDCPA and state consumer protections statutes related to LVNV's filing proofs of claim for time-barred debts. *Id.* LVNV defended that the plaintiffs failed to state a claim and the lawsuit should be dismissed under Rule 12(b)(6) and that the action was barred by res judicata. The district court granted LVNV's motion to dismiss under Rule 12(b)(6), finding that the filing of the proofs of claim were not "collection activity" under the statutes. *Covert v. LVNV Funding, LLC*, Civil Action No. DKC 13-0698, 2013 WL 6490318, at *8 (D. Md. Dec. 9, 2013). The

---

[15] The FDCPA action was initiated in March 2013. *Covert*, 779 F.3d at 244. Both Mr. Covert's and the Haworths' cases were closed on December 17, 2013. Final Decree, *In re Covert*, Case 08-22559, ECF Doc. No. 60 (Bankr. D. Md. Dec. 17, 2013); Final Decree, *In re Haworth*, Case 08-21847, ECF Doc. No. 64 (Bankr. D. Md. Dec. 17, 2013). Mr. Ayele's case was closed on January 7, 2014. Final Decree, *In re Ayele*, Case 08-21659, ECF Doc. No. 171 (Bankr. D. Md. Jan. 7, 2014). Mr. Brown's case lasted the longest, closing on April 28, 2014. Final Decree, *In re Brown*, Case 08-27037, ECF Doc. No. 110 (Bankr. D. Md. Apr. 28, 2014).

14

Fourth Circuit affirmed the district court's dismissal on grounds of res judicata. *Covert*, 779 F.3d at 244.

Unlike Ms. Haskins, in *Covert*, the plaintiffs asked a nonbankruptcy court to award personal remuneration based on nonbankruptcy law at the end of their bankruptcy cases because LVNV had participated in their bankruptcy cases. In effect, they were raising a defense to the proof of claim, and asking for damages for filing it, without objecting to the proof of claim in bankruptcy court. By contrast, if Ms. Haskins prevails, she has no personal benefit. She must still pay the same amount into her plan[16] and is precluded from relitigating the amounts required for plan confirmation. *See Dubois*, 834 F.3d at 531–32 ("[F]or most Chapter 13 debtors, the amount they pay into their bankruptcy plans is unaffected by the number of unsecured claims that are filed."). Ms. Haskins is not seeking personal damages, and instead she is using the bankruptcy claims allowance process in the bankruptcy court context.

In the end, *Covert* reaffirms that debtors who fail to object to claims during their bankruptcy, and thus implicitly accept as true the liability asserted by the claimant, are barred by res judicata from trying to take an inconsistent position and challenge the validity of that claim through separate, subsequent litigation.

For all the reasons outlined in this opinion, the confirmation order in this case did not determine the amount of liability owed to LVNV, and does not preclude the debtor from now raising an objection to that liability. The Fourth Circuit's holding in *Covert* does not dictate otherwise.

### *The Validity of the Proof of Claim*

---

[16] Because Ms. Haskins is not paying these unsecured creditors in full, the allowance or disallowance of any general unsecured claim would neither increase nor decrease the amount she must pay to the chapter 13 trustee, which he will then disburse to general unsecured creditors pro rata.

15

Having determined that the debtor's objection to LVNV's claim is not barred by the doctrine of res judicata, the Court must decide whether to sustain the objection.

The Fourth Circuit has constructed a burden-shifting framework for determining the validity of proofs of claim. *See generally In re Harford Sands Inc.*, 372 F.3d 637 (4th Cir. 2004). When a claimant properly files a proof of claim with all of the required supporting documentation, it is prima facie evidence of the claim's validity and the amount the debtor owes. *In re Falwell*, 434 B.R. 779, 783 (Bankr. W.D. Va. 2009); Fed. R. Bankr. P. 3001(c), (f). If a claimant files a prima facie valid proof of claim, "[t]he burden . . . shifts to the debtor to object to the claim" and to "introduce evidence to rebut the claim's presumptive validity." *Harford Sands*, 372 F.3d at 640 (internal citations omitted). Any evidence the debtor offers in rebuttal must negate at least one fact necessary to the claim's legal sufficiency, "must be sufficient to demonstrate the existence of *a true dispute* and must have probative force equal to the contents of the claim." *Falwell*, 434 B.R. at 784 (emphasis in original).

Ultimately, if the debtor carries his burden of making a proper objection to a claimant's proof of claim, the burden shifts back to the claimant to prove the amount and validity of the claim by a preponderance of the evidence. *Harford Sands*, 372 F.3d at 640. If the claimant cannot produce sufficient evidence, the claim fails, and the Court should sustain the objection.

The debtor objects that the claim is barred by the statute of limitations. The statute of limitations in Virginia for personal actions based on an oral contract is three years. Va. Code § 8.01-246(4). If the contract is in writing, however, the applicable statute of limitations is five years. Va. Code § 8.01-246(2). Causes of action on open accounts accrue "from the later of the last payment or last charge for goods or services rendered on the account." Va. Code § 8.01-249(8).

The debtor relied on the attachments to the proof of claim to explain that the debt was incurred or the last payment was made on June 4, 2009. The debtor further noted that three years had passed from June 4, 2009, until the filing of the petition. The debtor asserts that the statute of limitations on the debt is three years and that because nearly six years had passed, the debtor asserts her affirmative defense that the debt is now barred by the statute of limitations. LVNV concedes that its stale unsecured claim is "unenforceable against the debtor" by the statute of limitations. The Court finds that the debtor has met her burden of making a proper objection and that LVNV has failed to prove the validity of the time-barred claim. The Court sustains the objection to claim.

The Court will contemporaneously issue an Order consistent with the findings and ruling of this Memorandum Decision.

Entered: January 27, 2017

_____
Rebecca B. Connelly
U.S. Bankruptcy Judge

17